Nancy **KOSAKOW** Plaintiff,

v.

**NEW ROCHELLE RADIOLOGY ASSOCIATES, P.C.,** Defendant.

**No. 99 CIV. 1635 (CM).**

United States District Court, S.D. New York.

March 10, 2000.

---

**20.** Oral Arg. Tr., Sept. 7, 1999 at pp. 34–5.

William D. Frumkin, Sapir & Frumkin LLP, White Plains, NY, for Plaintiff.

Jordy Rabinowitz, Garfunkel, Wild & Travis, P.C., Great Neck, NY, for Defendant.

MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FMLA CLAIM AND REMANDING THE QUESTION OF DETERMINATION OF SEVERANCE BENEFITS TO THE DEFENDANT'S ERISA PLAN ADMINISTRATOR.

McMAHON, District Judge.

Plaintiff, Nancy Kosakow, was an x-ray technologist employed by Defendant, New Rochelle Radiology Associates, P.C. ("Practice"), from 1978 to 1997. In March 1997, while Plaintiff was on medical leave from her job, the Practice notified her that it was terminating her position. Plaintiff brings this suit against her former employer claiming: (1) that failure to reinstate her in her job or one similar upon the end of her medical leave was in violation of Section 102 the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615; and in the alternative, (2) even if the termination did not violate FMLA, Defendant is liable for severance pay under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Defendant moves for summary judgment to dismiss both claims on the grounds that (1) Ms. Kosakow was not an "eligible employee" within the meaning of FMLA (as construed through application of "hours worked" standards of the Fair Labor Standards Act ("FLSA")) and was therefore not entitled to the benefits of FMLA; or, in the alternative (2) the Practice did not violate FMLA because it eliminated Ms. Kosakow's position for legitimate business reasons; and (3) that Ms. Kosakow's ERISA claim must be dismissed because the Practice does not have an ERISA Severance Plan, and is therefore not subject to ERISA liability.

Ms. Kosakow argues that the Practice's motion for summary judgment should be denied. She claims that she meets eligibility requirements of FMLA as incorporated from the FLSA "hours worked" standards, and argues that are material issues of facts concerning whether the Practice terminated her in violation of her right to be reinstated to her job following medical leave. She further argues that material issues of fact exist as to whether the Practice maintained an ERISA Severance Plan.

For the reasons stated below, Defendant's motion for summary judgment dismissing the FMLA claim is granted. Because I hold that the Practice maintained an Severance Plan within the meaning of ERISA, I remand the severance claim back to the Practice for a ruling by the Plan Administrator.

I. *Factual Background*

The following are the undisputed facts, viewed in a light most favorable to the Plaintiff:

Defendant New Rochelle Radiology Associates, P.C. ("Practice"), is a professional medical corporation that provides a wide range of radiological services, (including MRI, radiation oncology, ultrasound, x-ray, mammography and CT-scans) to patients in the upper Bronx and lower Westchester County area of New York state. It provides services at two separate offices in New Rochelle: 150 Lockwood Avenue and at 175 Memorial Highway.

Plaintiff Nancy Kosakow began employment at the Lockwood Avenue office of the Practice as a licensed x-ray technologist in 1978. Ms. Kosakow was note certified to perform any other perform any other procedures, although in the mid–1970s, prior to her work at the Practice, she had performed some mammography. The Practice classified her position as part time, and she worked, on average, 28 hours per week.

On June 6, 1996, Ms. Kosakow underwent an ultrasound administered by Dr. Leonard Cutler, a physician/shareholder of the Practice. The ultrasound revealed a pathological cystic mass on her left ovary. Follow-up exams on July 12 and November 13, 1996 revealed that the mass had not diminished. On November 13, 1996, Dr. Isaiah Seligman, also a physician/shareholder of the Practice, advised Ms. Kosakow that the mass was potentially dangerous and that she would require surgery to remove it. A few days after her consultation with Dr. Seligman, Ms. Kosakow arranged to have surgery performed on January 14, 1997.

After she scheduled the surgery, Ms. Kosakow informed Gale Gluss, Office Manager for the Practice since 1991, that she required medical leave for the surgery. January 10, 1997, was Ms. Kosakow's last day of scheduled work at the Practice. On January 14, the surgery was performed and Ms. Kosakow began her recovery.

On March 7, 1997, while she was still on leave, Ms. Kosakow was informed by a letter from Adele Gargano, the Practice Administrator, that her x-ray technologist position at the Practice's 150 Lockwood Avenue office was "being eliminated due to overstaffing." (Def's Exh. 1.) In the same letter, the Practice offered to Ms. Kosakow the opportunity to continue working as a technologist on a per diem "as needed" basis. (*Id.*)

According to Defendant, Ms. Kosakow's position was eliminated as a result of a recommendation from the Practice's independent accountant, Roger Berman, that the Practice should look for ways to reduce unnecessary payroll expenses. (Berman Decl. ¶. 5–8.) Mr. Berman made this recommendation following a severe cash flow crisis in the Practice in September 1996, which he believed would create serious operational problems for the Practice. (*Id.* at 8–12.)

In October 1996, Ms. Gargano and Ms. Gluss started looking at the needs of the Practice at its Lockwood Avenue location and the responsibility of each employee at that office, with an eye to cutting costs. After reviewing that information, Ms. Gargano determined that Ms. Kosakow was the least essential technologist in the office. Her conclusion was based on three factors: (1) Ms. Kosakow was one of only two part-time technologists; (2) Ms. Kosakow was restricted to performing x-ray procedures and was not cross-trained for any other radiology modality (i.e. mammography and bone density radiology); and (3) Ms. Kosakow's performance evaluation was inferior to the other part-time technologist's evaluation. (Gargano Decl. at ¶ 14–19; Gluss Decl. at ¶ 31–45.)

Ms. Gargano reported her recommendations at an Executive Meeting of the Practice on November 14, 1996. Ms. Gargano averred that her recommendation to the Practice's shareholders, and the shareholders' subsequent decision to eliminate Ms. Kosakow's position, was made without any knowledge of Ms. Kosakow's need for surgery or her intent to take medical leave. She delayed informing Ms. Kosakow of the job termination, as the shareholders decided to make staff reductions after the new year in order to avoid staff morale problems. After the holidays, out of her stated concern for Ms. Kosakow's well being, Ms. Gargano decided to delay notifying Ms. Kosakow until after her recovery. (Gargano Decl. ¶ ¶ 21, 21.) As soon as she learned that Ms. Kosakow was ready to return to work, she wrote to her notifying her that the position had been eliminated. (*Id.*)

Ms. Kosakow rejected the Practice's offer of per diem work. She filed disability and discrimination claims with the New York State Department of Human Rights ("SDHR") and the Federal Equal Employment Opportunity Commission ("EEOC"). The gravamen of her complaint to the SDHR was that the Practice eliminated her position as a result of her medical disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* and the New York human Rights Law ("NYHRL"), N.Y. Exec. Law § 296. In response to her complaints with these two offices, the Practice filed an Answer and Narrative Reply defending its decision as based on the economic factors discussed above. Ms. Kosakow filed a rebuttal, in which she admitted that the financial reasons were part of the decision, but that other, impermissible considerations—namely, her surgery—had also prompted the elimination of her position.

The SDHR reviewed the case and determined that there was "no probable cause to believe that [the Practice] has engaged in or is engaging in the unlawful discriminatory practice complained of." (Def's Exh. 6.) The SDHR determination was grounded in three express findings of fact: (1) "Because of financial losses incurred by [the Practice] measures were taken to reduce expenses including a reduction in force"; (2) the Practice's only other part-time technologist employee "was cross-trained in bone density and was working on her own towards her Mammography Certification [and] was retained [instead of Ms. Kosakow], although she had less seniority, because of her qualifications"; and (3) Ms. Kosakow "was only certified as an x-ray Technician and was the only employee in both offices who was not cross-trained." (*Id.*) The SDHR thus concluded that "the record does not support complainant's charge that she was terminated because of her disability." (*Id.*)

The SDHR's finding was adopted by the EEOC on October 13, 1998 as part of its "right to sue" letter. (Def's Exh. 7.) Ms. Kosakow's 90–day time period for filing federal lawsuit based on the EEOC letter expired on January 1999. Ms. Kosakow failed to file such an action. Ms. Kosakow also chose not to appeal the SDHR's decision by bringing an Article 78 proceeding in New York State Supreme Court.

After the time to file a disability suit under the EEOC "right to sue" letter and to file an appeal under Article 78 had expired, Ms. Kosakow commenced the instant action, alleging that her termination violated FMLA and ERISA. (*Id.* at Exh. 8).

## II *Discussion of the Law*

Plaintiff brings a claim against the Practice for its failure to return her to her same, or an equivalent, position following her protected medical leave of absence, in violation of Section 102 of FMLA, 29 U.S.C. § 2615. In the alternative, Ms. Kosakow alleges that the Practice failed to pay her severance benefits in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B). She seeks injunctive relief in the form of reinstatement of her job and/or damages.

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-movant. *See Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. In making its determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *See id.* at 255, 106 S.Ct. 2505. However, to defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### A. *Plaintiff's FMLA Claim*

The FMLA was enacted because Congress believed "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods . . . ." 29 U.S.C. § 2601(a)(4). "Congress enacted substantive provisions entitling eligible employees to temporary leave, to certain continuing benefits, and to reinstatement . . . and made it 'unlawful for any employer to interfere with, restrain, or deny the existence of or the attempt to exercise, any right provided under [subchapter I of the Act].'" *Sarno v. Douglas–Elliman*, 183 F.3d 155, (2d Cir.1999)(quoting 29 U.S.C. § 2615(a)(1)). Employers may not "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c). FMLA tries to accomplish these goals "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3). Any eligible employees affected by such unlawful conduct are entitled to a private right of action for damages or equitable relief. *See* 29 U.S.C. § 2617(a)(1).

In her Complaint, Plaintiff seeks relief under Section 2615 of the FMLA, which reads in relevant part:

### (a) Interference with Rights

### (1) Exercise of Rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

29 U.S.C. § 2615(a)(1).

FMLA thus creates an entitlement and, at the same time, "provides protection in the event an employee is discriminated against for exercising those rights." *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir.1998). Thus, if an employer denies an eligible employee the same or

similar employment upon returning from FMLA leave, the employer is in violation of the FMLA. *See* 29 C.F.R. § 825.220(b).[1] Plaintiff's claim here is that by eliminating her job while she was on medical leave, her former employer violated, interfered with or denied her the exercise of her rights under FMLA. (Complaint ¶ 23.)

A prima facie case under FMLA requires Plaintiff to show that (1) she is an "eligible employee" as defined in 29 U.S.C. § 2611(2); (2) the Practice is an "employer;" (3) she was entitled to medical leave as a result of a serious health condition; and (4) she gave adequate notice to the Practice of her intention to take leave, as defined in 29 U.S.C. § 2612(e)(1). *See Slaughter v. American Building Maintenance Co. of N.Y.*, 64 F.Supp.2d 319 (S.D.N.Y.1999). In addition, a plaintiff must show that she is entitled to the benefit she is claiming was denied her. *See Belgrave v. City of New York*, 1999 WL 692034 at *43 (E.D.N.Y.1999).

Here, the parties have stipulated that the Practice is an employer within the meaning of FMLA and that Ms. Kosakow was entitled to leave. (Frumkin Decl., ¶ 6, Exh. 15). As Defendants have failed to dispute the issue of notice, I assume for the purposes of this motion, that Ms. Kosakow gave adequate notice of her intent to take medical leave. (Kosakow Aff. ¶ 12). The only elements that are disputed are the questions of whether Ms. Kosakow is an "eligible employee" within the meaning of FMLA, and whether she had a right to reinstate of her position, regardless of whether she had taken leave.

### 1. *Eligible Employee*

Defendant argues that Ms. Kosakow was not an eligible employee within the meaning of FMLA and therefore fails to state a claim for reinstatement of her job or damages. Defendant claims that Kosakow did not work 1,250 minimum hours during the twelve months prior to her leave. If that were true, she would not be entitled to the job protections under FMLA. *See* 29 U.S.C. § 2917(a). They argue that Ms. Kosakow is, thus, precluded from bringing any civil action pursuant to 29 U.S.C. § 1917(a), which provides that employers are only liable for damages and/or equitable relief in civil actions to ("eligible employees.").

In response, Plaintiff contends that she did work the minimum 1,250 hours during the 12–month period preceding her leave and is entitled to relief. In fact, Plaintiff contends that she worked 1257 hours during the relevant period.

An employee must meet two requirements to be considered eligible for protection under FMLA: (1) the employee must be employed by the employer for at least twelve months; and (2) the individual must have worked for at least 1,250 hours during the 12–month period immediately preceding her leave. 29 U.S.C. § 2611; 29 C.F.R. § 825.110. The parties have stipulated that Ms. Kosakow meets the first prong: she was employed at the Practice for at least twelve months. (Frumkin Decl., ¶ 6.) The very narrow question for this Court to determine is whether any triable issue of fact exists concerning the total number of hours Ms. Kosakow worked in the twelve months leading up to her leave.

The standards for calculating the hours of service requirement of FMLA are the legal standards established under Section 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, *et seq.*: "[F]or the purposes of determining whether an eligible employee meet the hours of services requirement . . ., the legal standards established under [FLSA] shall apply." 29 U.S.C. § 2612(2)(C). Under FLSA, "hours worked" does not include time paid, but only time actually spent working. Paid vacation, personal or sick leave and holidays are not included in hours worked. *See* 29 U.S.C. § 207(e)(2). *See also, Laco-*

---

1. "Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b).

*parra v. Pergament Home Centers, Inc.,* 982 F.Supp. 213, 218 (S.D.N.Y.1997).

The FMLA regulations also provide the means by which an employer may present evidence of the hours worked by an employee. "[A]ny accurate accounting of actual hours worked under FLSA's principals may be used." 29 C.F.R. § 110(c). Only if the employer fails to maintain an accurate record do the regulations place the burden on the employer to "otherwise demonstrate" that the employee did not work the required hours. *See id.*

Plaintiff makes three arguments for why Defendant's calculation of her hours is incorrect: (1) the start date of her leave was January 11, 1997, three days prior to her surgery, not January 14, the date of the surgery; (2) the time sheets are inaccurate because they fail to account for extra minutes she spent at the office prior to each shift; and (3) the Practice did not credit her for time she spent at continuing education seminars that were required by her work. Plaintiff must be correct as to all three arguments in order for her to meet the minimal "hours worked" requirement.

### a. Start Date of Leave

Ms. Kosakow contends that her leave began on January 11, 1997, three days prior to her surgery. Defendant argues that her start date is properly stated as January 14, 1997, the date she underwent surgery. If Ms. Kosakow's calculation is accepted, the 16 hours she worked on January 11 and 12, 1996 are included in the total hours worked in the 12 months preceding the leave, thus raising the total hours worked from 1,186.5 to 1,202.5 hours.

It is undisputed that Ms. Kosakow's last day of work prior to her surgery was Friday, January 10, 1997. Ms. Kosakow's work schedule was flexible, and she frequently worked a Wednesday through Saturday. (Kosakow Decl. ¶ 5.) In November, 1996, when she informed Ms. Gluss of her surgery date, Ms. Kosakow also informed her that her last day of work would be January 10, 1997, and reiterated that date

to Ms. Gluss at the time Ms. Gluss was writing up the technologists' schedule for the week of January 11. (*Id.* ¶ 12.) As a result of her notifying Ms. Gluss of her intended leave date, she was not assigned to work on Saturday, January 11. The reason she could not be scheduled for work that day was because of her surgeon's orders to rest prior to surgery and the make arrangements for her family during her absence. (*Id.*)

Defendant does not respond to this argument, but simply asserts January 14 at the leave start date.

Although it is not clear that Ms. Kosakow would have been scheduled to work on Saturday January 11, 1997, she has raised a material issue of fact as to whether, absent her notifying Ms. Gluss of her need to take leave beginning on January 10, she would have worked that Saturday. Taking into consideration the requirement that the method used to calculate the 12–month period be one that "provides the most beneficial outcome for the employee," I cannot conclude that Ms. Kosakow's leave began on January 14.

### b. *Accuracy of the Time Sheets*

Ms. Kosakow kept track of her hours by completing bi-weekly time sheets. The sheets were filled out and signed by Ms. Kosakow, and then reviewed by Ms. Gluss. These time sheets were then used by the Practice to determine Ms. Kosakow's wages for the period. (Gluss Decl. ¶¶ 6–8.) These time sheets demonstrate that Ms. Kosakow was paid for 1,364 hours between January 11, 1996 and January 10, 1997, the last date she worked before she commenced her leave. 160 of those hours represented paid holidays, sick leave and vacation leave. Thus, the time sheets reflect a total "hours worked" during the period to be 1,202.5 hours, or 47.5 hours less than the statutory minimum. (Gluss Decl. ¶ 9– 10; Kosakow Decl. ¶ 12; See Def. Exh. 10, Bates No. 100065.)

Plaintiff argues first that the time sheets were inaccurate because they did not include the extra minutes she worked each day by arriving at the office early. I find this argument without merit. Ms. Kosakow filled out the time sheets herself, and she signed them. To allow ·her to repudiate them now, based on no evidence other than her own testimony, would undermine the purpose of the record-keeping requirements of FMLA. In *Lacoparra v. Pergament*, 982 F.Supp. 213 (S.D.N.Y. 1997), my colleague Judge Conner addressed precisely the same sort of attack by a plaintiff on the accuracy of the time sheets she had prepared and signed. Judge Conner held that Plaintiff's argument that the time sheets could not be corroborated and that they ignored "off the clock hours" was without merit. *Lacoparra*, 982 F.Supp. at 219. The court noted that "Lacoparra is now seeking to discredit the time records upon which she was paid and to which she never previously objected." *Id.* Because she put on no evidence to call the time sheets into question, he rejected Plaintiff's arguments. *Id.*

To create a triable issue of fact in response to the actual time sheets put into evidence by the Practice, Ms. Kosakow must offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "This is particularly true where, as here, full discovery has taken place." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988). Given that Ms. Kosakow has presented no evidence to refute the accuracy of the time sheets that she herself completed and signed, I find that they are accurate.

Ms. Kosakow's argues that she was required, as a matter of the Practice's policy, to arrive at work early in order to turn on the x-ray machine. She claims an extra 38.75 hours of work as a result of her early arrival. As a matter of law, arriving early to work to turn on a machine does not entitle an employee to credit for additional hours worked. Rather, the Portal–to–Portal Act, 29 U.S.C. § 254 provides that employers are not subject to FLSA requirements for:

> activities which are preliminary to or postliminary to [an employee's] principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254.

Because Ms. Kosakow failed to present any evidence that her early arrival was required in order to perform functions that were an "integral and indispensable part of her principal activity," I conclude that she may not contend the Practice's time records on the ground that they fail to include her pre-working hour time. Furthermore, even if she had established evidence that the extra minutes were required, as a matter of law, the extra minutes may properly be excluded in her hours worked because they were de minimus. *See Reich v. NYCTA*, 45 F.3d 646, 652 (2d Cir.1995). Without these hours, she remains at 1202.5 hours, which is below the 1250 hours threshold by almost 4 full working days.

### c. *Continuing Education Seminars*

Plaintiff also contends that her hours worked should include the hours she spent at continuing education seminars sponsored by the American Registry of Radiologic Technologists ("ARRT"). In the twelve-month period leading up to her medical leave, it is uncontested that Ms. Kosakow attended four ARRT seminars on days when she was not otherwise scheduled to work. It is also uncontested that the Practice did not maintain records of the hours Ms. Kosakow spent at seminars. Ms. Kosakow presented certificates from the ARRT showing that she had received 14 credit seminar hours.

The Practice paid Ms. Kosakow for 1.5 hours of work pertaining to her attendance at a 3–credit, 3–hour seminar held at New Rochelle Hospital on February 21, 1996. (Kosakow Decl. ¶ 9, Exh. 10.) Ms. Kosa-

kow did not receive "work hour" credit on her time sheet for the remaining 1.5 hours of the seminar. On May 18, 1996 and November 2, 1996, Ms. Kosakow attended two separate 4–credit, 4–hour and 20 minute seminars at Stamford Hospital, in Stamford, Connecticut. (*Id.* at Exh. 7). On June 18, 1996, she attended a 3–hour and 20 minute course in Elmsford, New York. Plaintiff contends that the hours she spent at the seminars, as well as the five hours of commute time to and from Stamford and Elmsford,[2] which together total 18.5 hours, should be included in her hours worked.

In response, Defendant argues that Plaintiff's attendance at the seminars do not fall under the categories of continuing education that the FLSA requires be included in hours worked. The FLSA regulations provide that attendance at continuing education seminars need not be counted "as working time" if the following criteria are met: (1) attendance is outside the employee's regular working hours; (2) attendance is voluntary; (3) the seminar is not directly related to the employee's job; and (4) the employee does not perform any productive work during such attendance. 29 C.F.R. § 785.27.[3]

Defendants argue that the ARRT certification requires attendance at continuing education, but that ARRT certification is not a requirement of Ms. Kosakow's job. Because Ms. Kosakow's radiology certification is of general applicability, i.e., once certified, she can work as a technologist anywhere, the continuing education requirements are also of a general nature and are not specifically required by her employer. Defendants therefore contend that the seminars fall outside of the "working hours" requirement of FLSA because Ms. Kosakow's attendance was outside her regular working hours; her attendance was voluntary; the seminar was not directly related to her job; and she did not perform productive work.

In response, Plaintiff argues that the seminars were directly related to her job, and thus do not fall within the working hours exceptions contemplated in the FLSA regulations. Plaintiff points out that for all the continuing education seminars she attended, the Practice reimbursed her expenses as a "business-related expenses." Further, Plaintiff notes that the job description for Radiologic Technologists at the Practice contains the requirement that the employee "Maintains Licensure *and Complies with the ARRT's CE [Continuing Education] Requirements.*" (Frumkin Decl. ¶ 11, Exh. 20)(emphasis added). In addition, the Practice did credit her for 1.5 hours of time for one of the seminars she attended.

I conclude that there is a disputed issue of fact concerning both how many hours Plaintiff spent at the seminars and whether attendance at these seminars was directly related to Plaintiff's job.

However, because Ms. Kosakow cannot be credited for the extra hours she is claiming as a result of arriving at work a few minutes early each day, I conclude as a matter of law that she had not met the hours worked requirement for eligibility under FMLA. Based on leave starting date of January 11, 1997, the time sheets in the record, and the addition of 18.5 hours for commuting to and attendance at continuing education seminars, Ms. Kosakow

---

**2.** If the continuing education was a requirement of her job, then the commute time to and from the seminars would be properly included in her work hours. *See* 29 C.F.R. § 785.30.

**3.** Defendant notes that the regulations provide that continuing education need not be counted if an employee "on his own initiative attends an independent school, college or independent trade school after hours, the time is not hours worked for his employer, even if the courses are related to his employment." 29 C.F.R. § 785.30. In addition, two recent opinion letters by the United States Department of Labor have held that where the "training is of general applicability and not tailored to meet the particular needs of individual employers, ... nonexempt employees would not have to be compensated for time spent in such training." *See* 1997 WL 998038 (FLSA 1997); 1996 WL 1031798 (FLSA 1996).

worked 1221.5 hours in the twelve months preceding her leave, 28.5 hours short of the eligibility requirement.

### d. *Eligibility by Estoppel*

Even if the Court finds that she did not meet the hours required for FMLA eligibility, Plaintiff argues that she may still be entitled to benefits under a theory of eligibility by estoppel. She bases this claim on her contention that she was unaware of the hours requirement or that she was a few hours short of the required hours. She argues that had she know that she needed to work an extra thirty or so hours in order to become qualified to the entitlement to be reinstated in her job following her surgery, she would have made an effort to work a few extra days prior to taking her leave. She contends that she was not aware of the guidelines because they did not appear in the employee manual, and, as she an two other employees testified, the FMLA guidelines were not posted at the worksite. (Koskow Decl. ¶ 13; Cunéen Decl. ¶ 10; Loftus Decl. ¶ 5). She concludes that, because the Practice failed to provide notice of her rights under FMLA, it interfered with her rights, and is thus estopped from claiming she is ineligible. *See Fry v. First Fidelity*, 1996 WL 36910, \*1, (E.D.Pa.)(Jan. 30, 1996)(No. Civ.A.95–6019)(holding that employer's failure to give adequate notice of an employee's rights under FMLA may alone be enough for an otherwise ineligible employee be enough to state a claim for reinstatement under Section 2615(a)(1)).

Employers are required to post Department of Labor notices prominently where they can be readily seen by employees and applicants for employment. *See* 29 U.S.C. § 2619(a); 29 C.F.R. § 825.300a. It is undisputed that the FMLA guidelines were not included in the employee manual until after Plaintiff brought this lawsuit. Although Defendant produced a copy of the FMLA poster noting the 1250 hours eligi-bility requirement, there is no evidence in the record that it was posted—or at most, there is an issue of material fact. Therefore, summary judgment is not appropriate.

However, even if Ms. Kosakow is determined to be an eligible employee—whether by hours qualification or by estoppel—I find that she was not entitled to reinstatement of her job at the end of her medical leave because the job was eliminated for reasons wholly unrelated to her taking that leave.

### 2. *Entitlement to the Benefit Under FMLA*

Assuming, arguendo, that Ms. Kosakow is an eligible employee, she still must prove that her employer denied her benefits to which she was entitled under FMLA. *See Belgrave v. City of New York*, 1999 WL 692034 at \*43 (E.D.N.Y.1999). Defendants argue that Plaintiff has no FMLA claim because it eliminated Ms. Kosakow's position for legitimate business reasons. Plaintiff claims in response that there is a material issue of fact as to the reason her position was eliminated, and argue, by implication, that the elimination of her position represented retaliation for her exercising her right to medical leave under FMLA.

Under FMLA, "an [eligible] employee is not entitled to benefits to which she would not have been entitled had she not taken leave." 29 U.S.C. § 2614(a)(3)(A). Under FMLA, the burden rests on the employer to demonstrate that the decision to take an adverse employment action—including eliminating the employee's position—was based on legitimate business reasons, not on discriminatory or retaliatory grounds. *See Santos v. Knitgoods Workers' Union, et al.*, 1999 WL 397500, 1999 U.S. Dist. Lexis 9036, at \*9 (S.D.N.Y.1999); 29 C.F.R. § 825.216(a).[4] The burden is on the em-

---

4. The FMLA regulations state in part:
 An employee has no greater right to reinstate or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. *An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement*

ployer to prove that the employee is not entitled to reinstatement of her job because her job would have been eliminated during that same period, even if she had not taken leave. *See Santos,* 1999 WL 397500, at *9; McMahon and Greenbaum, *The Family and Medical Leave Act of 1993: Basic Provisions and Newly–Adopted Regulations, c108 ALI–ABA* at 829. However, if the Practice can show that there is no disputed issue of fact, and that it terminated the position for legitimate business reasons, then Plaintiff does not state a claim under FMLA.

3. *Collateral Estoppel Effect of the SDHR Findings*

■ Defendant urges this Court to apply its reasoning from *Harrison v. Arlington Central School District,* 60 F.Supp.2d 186 (S.D.N.Y.1999), to hold that collateral estoppel precludes relitigating the SDHR's determination that the Practice had a legitimate business reason for eliminating her job, and that her job would have been eliminated, regardless of her medical leave. Defendant contends that the Plaintiff's disability claim was based on her allegation that she was terminated as a result of her medical disability. It argues that Plaintiff brings essentially the same claim here, restated under a different statute. By alleging here that the Practice terminated her because she took her FMLA leave, Plaintiff puts at issue precisely the same question addressed by the SDHR in its opinion, namely, why was Ms. Kosakow's position eliminated. The SDHR concluded in its extensive findings of fact that Ms. Kosakow's position was eliminated for legitimate business and economic reasons, not because of her medical disability. Defendant argues that this finding of fact, which Plaintiff chose not to appeal, is preclusive here.

As a matter of law, the fact that the instant claim arises under FMLA, while the claim in the SDHR arose under New York State law and barring discrimination against persons with disabilities, and the ADA, does not bar application of collateral estoppel, as Plaintiff contends. This is because collateral estoppel, today more popularly known as issue preclusion, is not the same as res judicata, or claim preclusion.

■ Collateral estoppel "will bar the relitigation of an issue of law or fact that was raised, litigated, and actually decided by a judgment in a prior proceeding between the parties, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim." *N.L.R.B. v. United Technologies Corp.,* 706 F.2d 1254, 1260 (2d Cir.1983) (citations omitted). Collateral estoppel can be applied to preclude relitigation of issues raised between the same parties in a subsequent litigation, regardless of the underlying claims from which those issues arose. *See Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir.1994). Under New York law collateral estoppel when the issues in both proceedings are identical, there was [a] full and fair opportunity to litigate in the prior proceeding, and the issue was necessarily raised and decided. *Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 485, 414 N.Y.S.2d 308, 386 N.E.2d 1328 (1979). *See also, United States v. Hussein,* 178 F.3d 125, 129 (2d Cir.1999) (internal quotation marks omitted).

The Second Circuit, in *DeCintio v. Westchester County Medical Center,* 821 F.2d 111 (2d Cir.1987), discussed the standard used to determine whether a finding made during an administrative proceeding

---

*is requested in order to deny restoration to employment.* For example: (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, provided the employer has no continuing obligations under a collective bargaining agreement or otherwise. An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, would not be entitled to restoration.

29 C.F.R. § 825.216(a)(1)(emphasis added).

should be accorded preclusive effect in a subsequent federal lawsuit:

> The issue must have been material to the first action or proceeding and essential to the decision rendered therein ... and *it must be on the point actually to be determined in the second action or proceeding* such that 'a different judgment in the second would destroy or impair rights or interests established by the first.'

821 F.2d at 117. *See Harrison*, 60 F.Supp.2d at 189–190. (emphasis added).

### a. *Identity of Issues*

That the factual basis for the elimination of Plaintiff's position was argued and determined before the SDHR cannot be disputed. Here, Ms. Kosakow claimed in her complaints before the SDHR and the EEOC that she had been terminated in violation of the ADA and NYHRL not because of its legitimate business rationale, but because Plaintiff took disability leave. Under a different name, i.e. violation of FMLA, that is exactly what she claims in this action. Defendant correctly points out that although the terms of Ms. Kosakow's Complaint are confusing (she appears in her briefs to argue both a denial of benefits claim and a retaliation claim), the same issue lies at the heart of both complaints: whether the Practice had a legitimate reason—unrelated to her taking leave for surgery—for eliminating her position. I therefore find that the issue raised before the SDHR on the discrimination claim, and the issue raised here, are identical.[5]

The SDHR record makes clear that the Practice met its burden to show that it had a legitimate non-discriminatory reason for eliminating Plaintiff's job. (Def's Decl. Exh. 10). In its conclusion, the SDHR stated that "[b]ecause of financial losses incurred by [the Practice] measures were taken to reduce expenses including a reduction in force ... The record does not support [Ms. Kosakow's] charge that she was terminated because of her disability". (*Id.*) Applying the *DeCiento* standards, I find that a determination of whether the Practice acted for legitimate business reasons was "material" to the administrative claim. A finding that the Practice did, in fact, eliminate the position for legitimate business reasons was also "essential" to the SDHR decision. (*See* Def's Decl. Exh. 6). Only by making such a finding could SDHR determine that there was no probable cause to believe that Defendant discriminated against Plaintiff.

### b. *Full and Fair Opportunity*

 Under New York law, the burden rests with the party opposing the application of collateral estoppel to prove that it did not have a full and fair opportunity to litigate the issue. *Ryan v.New York Telephone Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984). "A determination whether the first action or proceeding genuinely provided a full and fair opportunity requires consideration of 'the realities of the [prior] litigation, including the context and other circumstances which ... may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him.' " *Ryan* at 501, 478 N.Y.S.2d 823, 467 N.E.2d 487(citing *People v. Plevy*, 52 N.Y.2d 58, 65, 436 N.Y.S.2d 224, 417 N.E.2d 518 (1980).)

 Plaintiff contends that she did not have a full and fair opportunity to litigate for two reasons. First, she says, she represented herself before the SDHR. That

---

5. Plaintiff also argues that where the claim is different, she argues, the issues to be determined are also different. None of the cases cited by Plaintiff supports such an argument, because it is an incorrect statement of the law. *See, e.g., Slaughter v. American Building Maintenance Co. of New York*, 1999 WL 717267, *10 (S.D.N.Y. Sept.14, 1999)(reject-ing application of collateral estoppel to an earlier arbitration award on the basis that the issue was not identical to the issue raised under the later FMLA claim). Collateral estoppel, as noted above, is not about litigation of claims, but rather about determination and litigation of issues.

does not mean that she did not have a full and fair opportunity to litigate. In *Ryan*, the New York Court of Appeals held that the determination of plaintiff's misconduct by the Unemployment Insurance Administrative Law Judge barred relitigation of the cause of plaintiff's termination, even though Plaintiff was not represented by counsel. *Id.* at 504, 478 N.Y.S.2d 823, 467 N.E.2d 487. New York law requires the Court to look at all the circumstances of the prior litigation. *See Gilberg v. Barbieri*, 53 N.Y.2d 285, 292, 441 N.Y.S.2d 49, 423 N.E.2d 807 (1981)(noting that effectiveness of counsel is one of nine factors to be considered in determining the full and fair opportunity to litigate). Having reviewed the papers Plaintiff submitted to the SDHR, I cannot conclude that the fact that Plaintiff chose to proceed without counsel prevents application of collateral estoppel here.

Second, Plaintiff argues, she bore the burden before SDHR to prove that she was discharged due to her disability, under the well known McDonnell–Douglas analysis that is applied before both federal courts and that agency.[6] *See* Charles A. Wright & Arthur R. Miller, Federal Prac. & Proc. § 4422 ("Issue preclusion may be defeated by shifts in the burden of persuasion or by changes in the degree of persuasion required.") Plaintiff contends that— notwithstanding the fact that she is the Plaintiff—it is Defendant who bears the burden of proof in this action, pursuant to

the terms of 29 C.F.R. § 825.216(a)(1), which states that "[a]n employer must be able to show that an employee would not otherwise have been employed at the time of reinstatement ... and would have the burden of proving that an employee would have been laid off during the FMLA period." She argues that this difference in who bears the burden means that the findings before SDHR—where Defendant did not have to prove anything—prevent applying collateral estoppel to the agency finding.

Defendant argues that plaintiff is in error. First, it contends that the Plaintiff, like any other plaintiff, always bears the burden of proving her case, and that no DOL regulation can alter the Federal Rules of Civil Procedure in that regard. And it notes that a number of courts have held that a plaintiff in a FMLA case brought under Section 2615 does bear the burden of proving her case, under the very McDonnell–Douglas burden shifting paradigm that was used by SDHR—which, if true, means that there is no difference in the burden of proof between the agency action and this Court. *See, e.g., Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir.1998); *Chaffin v. Carter*, 179 F.3d 316 (5th Cir.1999); *King v. Preferred Technical Group*, 166 F.3d 887 (7th Cir. 1999); *Hite v. Biomet*, 38 F.Supp.2d 720, 739 (N.D.Ind.)

Defendant is correct that, in the cases cited above, all of which involve allegations

---

**6.** McDonnell–Douglas, as applied to Title VII and ADA claims, requires that a plaintiff claiming discrimination first meet the burden of establishing, by a preponderance of the evidence, a prima facie case of retaliation. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 445–46 (2d Cir.1999); *Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir.19997)(en banc.) cert. denied, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). Applying the McDonnell–Douglas analysis, a Plaintiff must show that: "(1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action." *Bond v. Sterling, Inc.*, 77 F.Supp.2d 300, 303

(N.D.N.Y. 1999). Once the plaintiff has met the prima facie burden, the burden of production shifts to the employer to articulate a nondiscriminatory reason for its decision or conduct. *See Bickerstaff* at 445–446. But, "[a]lthough the burden of production shifts to the defendant, the ultimate burden of persuasion remains with the plaintiff." *Bickerstaff,* at 446 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). If the employer meets this burden, "the presumption raised by the prima facie case is rebutted, and drops from the case," *Hicks,* at 510, 113 S.Ct. 2742, and "the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Fisher,* 114 F.3d at 1336.

of retaliation or discrimination under FMLA, courts have uniformly imposed the McDonnell–Douglas structure on the order of proof. But this is not such a case. Here Plaintiff is complaining about Defendant's failure to grant her the rights to which she is arguably entitled under FMLA. It is precisely such a situation that is addressed by the DOL regulation that purports to impose on the defendant employer the burden of proving why plaintiff did not get her job back. To the best of our knowledge, no court has yet addressed the issue of whether this regulation actually shifts the burden of proof in a civil action from the plaintiff to the defendant— though several courts have adjudicated similar reinstatement cases on the assumption that under the regulation, employers must merely make a showing that the job would otherwise have been eliminated. *See, O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349 (11th Cir.2000)(affirming summary judgment for employer on the basis that "when an 'eligible employee' who was on FMLA leave alleges her employer denied her FMLA right to reinstatement, the employer has an opportunity to demonstrate it would have discharged the employee even had she not been on FMLA leave."); *Vargas v. Globetrotters Eng. Corp.,* 4 F.Supp.2d 780, 783 (N.D.Ill.1998)(secretary had no right to reinstatement to position because it had been eliminated before her return from leave); *Carrillo v. National Council of Churches of Christ,* 976 F.Supp. 254, 256 (S.D.N.Y.1997)(termination while employee was on leave did not violate FMLA). The Tenth Circuit has gone even further, to state that where a plaintiff making a claim for reinstatement disavows that her claim is one of discrimination or retaliation for taking FMLA leave, any reason—or no reason—put forward by the employer at summary judgment defeats the claim because "any reason for terminating [plaintiff's] employment would not involve FMLA." *Gunnell v. Utah Valley State College,* 152 F.3d 1253, 1262 (10th Cir.1998).

This is a fascinating digression, and if it were necessary to resolve the question I suppose I could do it. However, as noted above, who bears the burden of proof is but one of many facets to be considered in deciding whether a party had a full and fair opportunity to litigate in the prior proceeding. In this case, weighing this factor in Plaintiff's favor, there are so many other factors favoring the Defendant that I have no difficulty concluding that she had a full and fair opportunity to litigate before the SDHR

Complainants bringing claims before the SDHR presumptively have a full and fair opportunity to litigate. *See DeCintio,* 821 F.2d at 117; *Harrison,* 60 F.Supp.2d at 190. I find the presumption valid in this case. In response to the Practice's Answer and Reply to Complaint, Ms. Kosakow submitted an eleven-page Rebuttal addressing the Practice's contention that it eliminated her position for legitimate economic reasons. (Def's Decl. Exhs. 4 & 5.) Further, the SDHR held an interview with Ms. Kosakow in which she was able to present any other evidence to rebut the Practice's showing. Finally, Ms. Kosakow had the opportunity to appeal the SDHR determination through an Article 78 proceeding, or followed up with the disability claim in federal courts with her "right to sue" letter. That she chose not to pursue those avenues, which of course was her right, cannot compel a finding that she did not have a full and fair opportunity to litigate the issue of whether the Practice had a legitimate reason for her dismissal. *See Harrison,* 60 F.Supp.2d. at 191.

Because I find the issues identical and that Plaintiff had a full and fair opportunity to litigate the question at the SDHR, I conclude that collateral estoppel precludes Plaintiff from relitigating here the issue of whether the Practice terminated her position for legitimate business reasons. Applying the SDHR conclusion that the Practice had a legitimate business reason for terminating the position that was unrelated to Plaintiff's medical leave or medical condition, I must hold that no reasonable jury could find that Plaintiff was entitled

to the FMLA benefit she claims in this case. I grant Defendant's motion for summary judgment and dismiss the FMLA claim on this basis.

### B. *The ERISA Claim*

Ms. Kosakow seeks an unspecified amount of money as severance benefits under ERISA, 29 U.S.C. § 1002(1), because of her separation from employment. (Compl.¶¶ 18–20, 26–28). Plaintiff states that, during the period of her employment at the Practice, there existed an employee benefit plan within the meaning of ERISA that provided for the payment of severance benefits. In the alternative, she claims that a pattern or practice of providing severance benefits existed.

Defendant argues that this claim cannot survive summary judgment for two reasons. First, the Practice has no ERISA severance plan and therefore there is no federal jurisdiction to hear the claim. Second, even if this Court did have jurisdiction, Plaintiff has failed to demonstrate that the Practice either acted arbitrarily and capriciously in not paying severance amounts to Ms. Kosakow. Further, Defendant states that because she was not terminated, but rather her position was eliminated and she was offered per diem work, Plaintiff was not eligible for severance pay.

▮▮ ERISA grants federal district courts concurrent jurisdiction over all claims by an "employee welfare benefit plan" beneficiary who seeks to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." 29 U.S.C. § 1132(a)(1)(B) & (e)(1). Because the question of existence of an ERISA plan is a question of subject matter jurisdiction, it is a question of law for the court to determine. *See Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1190 (2d Cir.1996). The Court may—indeed must—make all factual determinations

necessary to support its conclusion on jurisdiction. Thus, in this unique instance, the Court will resolve any disputes issue of fact concerning the existence of a Plan.[7]

"The term 'employee welfare benefit plan' has been held to apply to most, but not all, employer undertakings or obligations . to. pay severance benefits." *Schonholz v. Long Island Jewish Medical Center,* 87 F.3d 72, 75, (2d Cir.1996) *cert. denied,* 519 U.S. 1008, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996). The Supreme Court and the Second Circuit have held that in order to constitute an "employee welfare benefit plan," the "undertaking or obligation requires the creation of an ongoing administrative program." *Schonholz,* 87 F.3d at 75, (citing *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 12, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)); *Janover v. Bernan Foods, Inc.,* 901 F.Supp. 695, 699 (S.D.N.Y.1995).

▮▮ In analyzing whether an undertaking constitutes a plan, the Court looks to: (1) "whether the employer's undertaking or obligation requires managerial discretion in its administration"; (2) "whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits"; and (3) "whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." *Schonholz,* 87 F.3d at 76 (citations omitted). "Severance benefits which require only one lump sum payment in the future do not create a 'plan' under ERISA because a one-time payment does not entail a true administrative scheme." *Janover,* 901 F.Supp. at 699. For example, a company's one-time decision to pay severance to employees being let go as part of a massive lay-off does not create an ERISA plan. *See Fort Halifax Packing* 482 U.S. at 12, 107 S.Ct. 2211.

---

7. Thus, the fact the Plaintiff raises issues of fact concerning the existence of a Plan— which she does—does not entitle her to a jury trial to resolve these issues.

Plaintiff notes that a portion of the Practice's Policy Manual: "An employee may be subject to termination for sufficient cause. Persons so dismissed receive no advance notice and forfeit all terminal benefits." (Frumkin Aff. Exh. 5 at 6.) Plaintiff argues that, because those terminated for cause are not entitled to benefits, it follows that those terminated without cause are entitled to benefits. The Policy Manual goes on to state that terminated employees "shall ... receive appropriate severance pay where applicable." (*Id.* at 7.) Reading these two provisions together, Plaintiff argues that the Practice has an administrative scheme that requires both managerial discretion and a separate analysis of each employee in light of certain criteria, i.e. whether an employee was terminated for "sufficient cause" relating to misconduct (so as not to be eligible for a severance benefit) and whether severance is "applicable" (according to standards not identified in the papers).

Plaintiff also points to the payment of eight-weeks severance pay to Una Howard, a technologist at the Practice who was terminated in July 1997, as evidence of the administrative scheme. A single payment of a lump-sum severance to another employee, which payment was made after the time Plaintiff's position was eliminated, could not have created in Plaintiff an expectation of receiving such a payment. However, I do find that the provision in the Policy Manual requiring that terminated employees "receive appropriate severance pay where applicable" would be perceived by a reasonable employee as an ongoing commitment of the Practice to provide such benefits.

By the plain language of the Policy Manual, administrative and managerial discretion is required to determine whether a terminated employee is entitled to severance pay, and the employer was required to analyze each employee's situation individually in light of certain circumstances, thus satisfying the two remaining prongs of *Schonholz*. (See Pl. Exh. 27, Novich Dep. at 102.) Indeed, that is the crux of the Policy Manual's distinguishing between employees terminated "for cause" and those who are simply referred to as "terminated employees." I therefore find that the terms of the Policy Manual created an ongoing administrative plan within the meaning of ERISA. Plaintiff, therefore, was entitled to review under the terms of the Plan, and is entitled to seek review in federal court of any determination made under the Plan.

Defendant also argues that Plaintiff was not actually "terminated" within the meaning of the Policy Manual, because she was offered the opportunity to stay on as a technologist with the Practice on a per diem basis. Submission of this question is premature, however, since whether Plaintiff was terminated within the meaning of the Practice's severance plan is a question to be determined in the first instance by the Plan Administrator.

Defendant, through the testimony of Dr. Ira Novich, the President of the Practice, admitted that it did not even consider paying Ms. Kosakow severance pay; let alone consider whether she had been terminated:

Q: Was there any consideration of giving severance to Ms. Kosakow when her position was eliminated?

A: I don't think so. I mean, there wasn't any.

Q: Do you know the reason there wasn't any?

A: I don't know the reason. I don't know the reason why we would give somebody or why we wouldn't.

Q: In your view, is the elimination of a position an applicable situation for the provision of severance pay?

A: I guess maybe yes, maybe no. I meant, the way we looked at this, we weren't firing somebody... In the case of Una [Howard], we were basically firing her essentially, letting her go. So maybe that was the reason....

(Novich Dep. at 102.)

Thus, the shareholders of the Practice did not actually consider to pay Ms. Kosakow severance pay. There is also no evidence

in this record of whether eliminating her job and offering her part-time work was a termination within the meaning of the on-going plan contemplated in the Policy Manual.

Because no decision or consideration was made, I have no administrative record to review. I thus remand the ERISA claim back to Defendant for a proper determination of Plaintiff's entitlements under the severance plan described in the Practice Policy Manual.

The Plan Administrator should determine (1) whether the elimination of Kosakow's position was a termination within the meaning of the Plan, and, if she was terminated, (2) whether she was entitled to severance pay, that is, whether severance pay is "applicable" (and, hence, mandatory) in Plaintiff's case. During remand, this Court retains jurisdiction over the case. The Defendant shall grant or deny Kosakow's severance claim within 30 days of her submission of evidence of her claim to the Plan Administrator. The parties are directed to report the status of the remand to this Court on the 60th and 120th days after the date of this order.

This constitutes the decision and order of this Court.