**Nancy KOSAKOW, Plaintiff,**

v.

**NEW ROCHELLE RADIOLOGY ASSOCIATES, P.C.,**
**Defendant.**

**No. 99 Civ. 1635(CM).**

United States District Court,
S.D. New York.

Sept. 6, 2000.

---

William David Frumkin, Sapir & Frumkin, White Plains, NY, for Nancy Kasakow, plaintiff.

Jordy Rabinowitz, Garfunkel, Wild & Travis, P.C., Great Neck, NY, for New Rochelle Radiolo, New Rochelle Radiology Associates, P.C., defendant.

MEMORANDUM DECISION AND ORDER AFFIRMING THE PLAN ADMINISTRATOR'S DENIAL OF PLAINTIFF'S APPLICATION FOR SEVERANCE PAY UNDER THE ERISA PLAN AND GRANTING DEFENDANT SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Nancy Kosakow sued her former employer, New Rochelle Radiology Associates (the "Practice"), arguing that her termination while on medical leave violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, and, even if not in violation of FMLA, Defendant's failure to pay her severance pay was in violation of Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). In a decision and order dated March 10, 2000, this Court found that a prior New York State Department of Human Rights determination that Defendant had legitimate business reasons—unrelated to Plaintiff's medical leave—collaterally estopped Kosakow from rearguing the reasons for her termination. As a result, the Court found Plaintiff had failed to state a claim under FMLA. However, the Court found that Defendant did maintain a Plan within the meaning of ERISA and that Plaintiff was therefore entitled to a determination by the Plan Administrator as to whether she would qualify for severance benefits. The Court remanded the claim to the Plan Administrator for two determinations: (1) whether the elimination of Plaintiff's position was a termination within the meaning of the Plan, and if she was terminated; (2) whether she

was entitled to severance pay. *See Kosakow v. New Rochelle Radiology Assocs., P.C.* 88 F.Supp.2d 199, 216 (S.D.N.Y.2000). The Court permitted Plaintiff to submit evidence as to her alleged entitlement to severance to the Plan Administrator prior to the Plan Administrator making its determinations. *Id.*

On April 7, 2000, Plaintiff forwarded to Defendant a "Submission Pursuant to Remand without Prejudice to Family and Medical Leave Act Claim."[1] (Frumkin letter to Plan Administrator, Apr. 7, 2000.) On April 13, 2000, Plaintiff confirmed to Defendant in writing that she did not intend to present any additional evidence with respect to her ERISA claim. On May 10, 2000, Defendant responded in writing to Plaintiff's Submission and made a series of factual and legal determinations. In so doing, Defendant explicitly stated that it "contests the Court's finding that it has an ERISA Plan governing severance benefits, and expressly reserves the right to appeal that determination, notwithstanding its response to [plaintiff's] counsel's letters and its making the following determination according to Court Order." (Gargano letter to Kosakow, May 10, 2000, hereinafter "Determination Letter".) The Administrator addressed both questions posed by the Court and concluded that (1) Kosakow had not been "terminated" within the meaning of the Plan, and (2) even if she had been "terminated," Kosakow was not entitled to severance pay.

For the reasons stated below, the first determination is reversed and the second is affirmed. Defendant's motion for summary judgment is granted and the case is dismissed.

*Standard*

"[A] denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretion-

---

**1.** By so stating, Plaintiff intended to preserve the right to judicial review of this Court's denial of her FMLA claim.

ary authority to determine eligibility for benefits or to construe the terms of the Plan." *Firestone Tire & Rubber v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Employee Manual, which constitutes Practice's ERISA Plan, does not contain language conferring the kind of broad discretion that post-*Firestone* decisions have held could form the basis for a more deferential review. *See Masella v. Blue Cross & Blue Shield of Conn.,* 936 F.2d 98, 103 (plan provisions relied on by Blue Cross did not establish that is was granted discretionary authority to construe plan terms); *see, e.g., Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 481 (9th Cir.1990) (plan gave trustees the power "to construe the provisions of . . . the Plan" and provided that any construction adopted by the trustees in good faith would be binding); *Batchelor v. Int'l B'hood of Electrical Workers,* 877 F.2d 441, 443 (5th Cir.1989) (Plan gave trustees "full power to construe the provisions of this Agreement" as well as authority to "interpret the Plan")' *Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37, 39 (11th Cir.1989) (plan conferred upon the trustees "full power to construe the provisions of [the] Trust"). I therefore apply the *de novo* standard to the Administrator's decision to deny Kosakow severance pay.

Under the *de novo* standard, this Court is required to give Plan terms "their plain meanings, . . . the interpretations given by the average person," *Wickman v. Northwestern Nat. Ins. Co.,* 908 F.2d 1077, 1084 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990) and read the Plan as a whole. *See Alfin Inc. v. Pacific Ins. Co.,* 735 F.Supp. 115, 119 (S.D.N.Y.1990). The Plan Fiduciary, i.e. the Practice, must show that the claimant's interpretation of the Plan is unreasonable. *Id.* All ambiguities must be construed in favor of the claimant. *Masella v. Blue Cross & Blue Shield of Connecticut,* 936 F.2d 98, 107 (2d Cir.1991).

*Kosakow Was "Terminated"*

The Practice Plan Administrator concluded that Kosakow was not "terminated" from her employment with the Practice. In support of this conclusion, the Administrator cited facts in the evidentiary record before it, including the fact that "the P.C. expressly offered you continued employment on a per diem basis", and that "Dr. Novich [the President of Practice] testified during deposition that 'we weren't firing somebody.'" (Determination Letter at 3.) The Administrator further noted that the Practice Manual[2] "provides that per diem employees are a distinct category of 'employees'—i.e. persons 'employed by the P.C.'" (*Id.*) (citing Manual Section III. F.4.).

■ Plaintiff argues that the Administrator's finding is incorrect. I agree with Plaintiff. Nothing in the record supports the Administrator's finding that Defendant's inchoate offer to Plaintiff of per diem work on an "as needed" basis—and apparently as an "independent contractor"—is sufficiently definite to qualify as continued "employment." No ordinary person could have so understood Defendants' "offer." Therefore, Kosakow must have been "terminated."

Defendant notes that the Black's Law Dictionary defines "Termination of Employment" as ". . . a complete severance of relationship of employer and employee." Because the Practice offered to continue its relationship with Kosakow through per diem work "as needed," Defendant claims that it did not completely severe that relationship. However, it would appear that the Practice did in fact sever the employer-employee relationship, and then made a naked promise that it might renew the relationship (though under the rubric of independent contractor rather than employee) if and when her services were needed—which might have been never. In the absence of an offer of any definite

**2.** Although the Policy Manual was revised in certain respects effective September 22, 1998, the operative plan document is the Policy Manual that was in effect at the time of Ms. Kosakow's termination, which had an effective date of March 1, 1995.

work schedule—even one hour of assigned work—the only reasonable inference that a person in Ms. Kosakow's position could draw was that she had been "terminated" by the Practice.

Defendant apparently relies on Black's because the word "Termination" is not defined in the Plan. However, Section III(G) of the Policy Manual, entitled "Termination of Employment," lists six ways in which someone's employment can be terminated by the Practice: (1) retirement; (2) voluntary resignation; (3) termination for cause; (4) death; (5) termination without notice; and (6) reduction in force. The fair implication is that, if Plaintiff's enforced departure falls within one of these categories, her employment was "terminated." Here, Plaintiff received a letter, dated March 7, 1997, telling her that her position was being "eliminated" due to "overstaffing." Cutting staff in response to overstaffing is just another way of saying that the Practice was carrying out a reduction in force. Thus, under the terms of the Plan, Plaintiff was terminated.[3]

In short, I find that Plaintiff was in fact terminated and that the Plan Administrator's ruling to the contrary was arbitrary, capricious and unsupported by the evidence.

*Kosakow is Not Entitled to Severance Pay*

Having found that Kosakow was indeed terminated, I nonetheless affirm the Plan Administrator's determination that she was not entitled to severance pay.

The Practice Policy Manual provides for the payment of severance benefits in two separate provisions. Article III.H.B provides that severance payments will be made "where applicable." Article III.G.3 provides that management "may" elect to give "equivalent severance" in lieu of appropriate advance notice of termination and states that "[t]erminated employees shall ... [r]eceive appropriate severance pay where applicable." In her Determination Letter, the Plan Administrator stated that "[t]he P.C. has determined that 'where applicable' requires the payment of severance (i) only in special or exceptional circumstances; and (ii) only where a shareholder or other management employee makes the affirmative request to the other shareholders that severance be paid." She went on to note that, even if the P.C. had "terminated" her, "it would not have offered severance to [Kosakow] because, in its opinion, there were no special exceptional circumstances."

The Plan Administrator cited several reasons supporting her determination to deny severance payments: (1) Kosakow was a part-time employee ("The P.C. has not and does not make severance payments to part-time employees.") (Determination Letter at 4.); (2) Kosakow was not a supervisor, manager, administrator or physician employee ("The P.C. would not have considered it appropriate to make severance payments to employees not employed in a supervisory, managerial, administrative, or professional capacity.") (*Id.*); and (3) Kosakow was terminated at a time of economic trouble for the Practice ("the P.C. was operating under abnormal business conditions ... the P.C. would have determined that you would not be entitled to severance benefits.") (*Id.*)

In response to these findings, Plaintiff argues that, as she was "terminated" within the meaning of the Plan, she is entitled to severance pay. Plaintiff contends that, because Section III(G) explicitly excludes employees terminated for cause from receiving severance benefits, an employee who has not been terminated for cause is entitled to severance. Furthermore,

---

**3.** Plaintiff argues that Defendant's March 7 letter included a COBRA notice of her health insurance benefits, which she contends would only have been sent if she were being terminated. That is incorrect; as Defendant points out, COBRA specifically states that the notice requirement was triggered upon a *termination* or *reduction in hours* resulting in a loss of health insurance benefits. *See* 29 U.S.C. § 1163(2). However, this is of little assistance to Defendant, since the practice did not offer Plaintiff reduced hours—or any hours. Defendant said, "We'll call you if we need you." That is a termination.

Plaintiff argues that, because the three grounds discussed by the Administrator do not appear as part of the language of the Plan, those grounds are impermissible criteria against which to judge her eligibility for severance pay. According to the Plaintiff, if the Administrator uses criteria not within the Plan, the denial of benefits under those criteria violates ERISA.

ERISA requires that the "circumstances which may result in disqualification, ineligibility or denial of loss of benefits" be contained in all plans. 29 U.S.C. § 1022(b). The accompanying regulations require that benefit plans include:

> a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture or suspension of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits....

29 C.F.R. § 2520.102–3(1).

■ Plaintiff contends that the Practice Plan does not meet these requirements. I do not agree.

The Plan itself states in rather broad terms that terminated employees "shall ... receive appropriate severance pay *where applicable.*" (Policy Manual at Section III(G)) (emphasis added). Because the words "where applicable" are not otherwise defined, the Administrator has broad discretion to make the "applicability" decision. Thus, even if the Plan specifically precludes severance for employees terminated for cause (as it does), that does not mean that the Plan mandates the payment of severance to all other employees. Rather, the Plan merely allows the Practice to determine whether payment would be appropriate in a particular case.

Plaintiff argues that the Court should find it "inappropriate" to deny her severance benefits because the Practice paid severance benefits to Una Howard—another former employee who fell victim to job-cuts in 1997.

Una Howard was terminated from the Practice sometime after Kosakow left the Practice.[4] Howard had been a full-time employee of the Practice for almost twenty years. Her position was eliminated as part of the Practice's overall cost-cutting. After she had already been separated from employment at the Practice, she was given a lump-sum payment equivalent to eight weeks salary. In consideration for the payment, Ms. Howard signed an agreement in which she released any and all claims against the Practice. (*See* Letter and Release, attached to Def's Motion for Summary Judgment at Exh. 20.).

The Practice maintains that it was under no obligation to bestow the payment on Ms. Howard. (Determination Letter at 5.) In her Determination Letter, the Plan Administrator discussed the payment to Una Howard:

> The P.C.'s payment of monies to Ms. Howard were not severance payments paid pursuant to any alleged Plan or pursuant to the Manual. Instead, the P.C. made a one time payment from its operating account to Ms. Howard expressly contingent on and in consideration for her releasing any and all claims against the P.C. While this payment was characterized as severance in the agreement reached with Ms. Howard, it was not made pursuant to the Manual, but only in connection with her executing a General Release.

(Determination Letter at 5.)

The Practice therefore contends that the payment to Howard did not constitute severance pay. The Practice further argues that, *even if the Payment to Ms. Howard were severance*, Ms. Howard's circumstances were different from Ms. Kosakow's, such that defendant could reasonably have concluded that severance was

---

4. It was for this reason that the Court noted in the prior opinion in this case that Kosakow had no expectation of a severance payment. *See Kosakow,* 88 F.Supp.2d at 215.

"applicable" in Ms. Howard's case, but not Ms. Kosakow's.

The record does not reveal what sort of claims Ms. Howard was dissuaded from pursuing in connection with her termination, or whether she had in fact consulted with counsel or threatened litigation. Thus, while I would agree that making a payment to an employee in exchange for a release of claims that resolved potential litigation did not constitute "severance" within the meaning of the Plan, I am in no position to draw any conclusion that this is what occurred.

 However, even if Ms. Howard's payment were characterized as severance, I agree with the Plan Administrator's conclusion that Ms. Howard's circumstances were sufficiently different from Plaintiff's for the Practice to conclude that a payment was "applicable" in Ms. Howard's case, and not "applicable" in Plaintiff's. It is entirely reasonable and rational for the Practice to conclude that severance would be appropriate in the case of a full-time employee but not in the case of a part-time employee.

I find Plaintiff's reading of the Plan to require the payment of severance in all cases of termination without cause to be unreasonable and in clear contradiction to the plain language of the Plan, which grants broad discretion to the Practice to determine the circumstances under which severance may be paid. I further find that the Plaintiff has failed to show that the payment of severance to Ms. Howard made the denial of Kosakow's application for severance unreasonable. I therefore affirm the Plan Administrator's determination that the language in the Plan calling for severance payments "where applicable" requires the payment of severance only in exceptional circumstances, and her subsequent determination that Ms. Kosakow's case presented no such exceptional circumstances.

*Conclusion*

The Determination of the Plan Administrator denying severance benefits to Plaintiff is affirmed and Plaintiff's ERISA claim is dismissed.

This constitutes the decision and order of this Court.