**Gerald HARRISON, Plaintiff,**

**v.**

**ARLINGTON CENTRAL SCHOOL DISTRICT and George Beckwith, Defendants.**

**No. 98 CIV. 5338(CM).**

United States District Court, S.D. New York.

July 29, 1999.

---

B. Harold Ramsey, Poughkeepsie, NY, for Gerald Harrison, plaintiff.

Leah L. Murphy, Raymond G. Kuntz, PC, Bedford Village, NY, for Arlington School District, George Beckwith, defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Gerald Harrison ("Harrison") brings this action alleging that his erstwhile employer, defendant Arlington Central School District (the "District"), discriminated against him on the basis of his race. Harrison was a bus driver/custodial worker for the District from November 1986 to March 1997. He was in the classified service of the State of New York and as such was covered by the New York Civil Service Law.

After reviewing the record, I find that the following facts are undisputed:

Prior to September 1996, in addition to his regular duties, Harrison was assigned to after-school activity and sports runs, which provided him with the opportunity to receive unscheduled overtime. In the late Spring of 1996, Harrison's supervisor, defendant Director of Transportation George Beckwith ("Beckwith") discovered that plaintiff had been padding his overtime sheets. When the schedule of assignments was handed out for the following school year, Harrison was no longer given any unscheduled overtime. At a meeting held on September 17, 1996, Harrison was advised that the reason for this change was the padding of his overtime during the prior year. Harrison was also told that he would only be given assignments that excluded the opportunity for unscheduled overtime, so his future activities could be monitored. His union representative, Deborah DeGeorge, was present at this meeting.

On October 11, 1996, Harrison filed a charge of discrimination ("Charge 1") with the New York State Division of Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC"). He alleged that he was denied overtime runs due to his race. The SDHR determined that the District had a legitimate

business reason for making its decision, in that Harrison had been caught padding his overtime. The SDHR dismissed the charge of discrimination with a finding of no probable cause on March 5, 1998. Harrison neither appealed this finding to the New York State Supreme Court via CPLR Article 78 nor requested the EEOC to make an independent assessment. Therefore, although it issued a Right to Sue Letter dated April 30, 1998, the EEOC adopted the SDHR's findings, stating, "the evidence obtained during the investigation did not establish violations of the statutes." *See* April 30, 1998 Determination, attached as Ex. K to the Affidavit of Raymond G. Southard in support of the motion to dismiss, or in the alternative for summary judgment ("Southard Affidavit").

In or about September 1997—one year after he was denied overtime runs—Harrison applied for the position of "Relief Driver." Because this particular position presented many opportunities for unscheduled overtime, Beckwith viewed Harrison as an unsuitable candidate and refused to interview him. At a meeting dated September 17, 1997, Beckwith informed Harrison of this decision. Ms. DeGeorge, plaintiff's Union representative, was present at this meeting. According to Ms. DeGeorge, Beckwith informed Harrison at that meeting that he (plaintiff) could not be trusted in light of his prior padding of time sheets, and stated that he would only be offered work that the District could monitor.

Moreover, Beckwith was aware of another circumstance that rendered Harrison unfit for this position, although he chose not to reveal it at that time. At or about the same time Harrison made his application, the District was contacted by a representative of State Farm Insurance Company, Harrison's insurance provider. The claims analyst informed Mr. Raymond Southard of the District that there were questions regarding Harrison's application for lost wages following an automobile accident he suffered on January 1, 1997. Harrison had put in a claim for lost wages for the period January 6, 1997 through July 28, 1997, and he was paid in full on that claim. However, plaintiff had returned to work on April 7, 1997. Thus, State Farm had paid him some $7,500 more than he was entitled to receive. When it appeared that the matter would come to light, Harrison convinced a stenographer at the District's Middle School to type a letter to the carrier on District letterhead, confirming that his back-to-work date was July 29, 1997. The secretary subsequently resigned her position when confronted with her participation in Harrison's fraud.

Not so Mr. Harrison. In an act of unmitigated chutzpah, he filed a union grievance against the District on October 21, 1997 (the "Grievance"), this time charging that Beckwith's decision to deny him the position of Relief Driver was made on account of his race.

State Farm went to the Dutchess County District Attorney with the results of its investigation. On March 3, 1998, Harrison was arrested and charged with Falsifying Business Records, Grand Larceny in the Third Degree and Insurance Fraud. He pleaded guilty to Insurance Fraud in the Fifth Degree on April 28, 1998, and was sentenced to a conditional discharge conditioned on his making restitution. By pleading guilty, Harrison admitted that he had committed the criminal act charged.

The District also commenced an investigation into possible disciplinary charges arising out of the false insurance claim. The District concluded that Harrison had used District personnel and facilities to bring about an insurance fraud. In the course of the investigation, the District also learned that Harrison had used District phones to make long distance phone calls to Jamaica. On November 5, 1997, he was suspended without pay, pending completion of the investigation into possible criminal conduct. He was charged with misconduct later in the month, and after a disciplinary hearing conducted pursuant to Section 75 of the New York Civil

Service Law, he was found guilty of misconduct. The Hearing Officer made this finding despite Harrison's contention, which was raised during the hearing, that the District had preferred disciplinary charges against him in retaliation for his filing of the union grievance concerning Beckwith's decision to deny him the position of Relief Driver. (It should be noted that the Hearing Officer did not make a specific finding of non-retaliation in the face of the District's objection to his doing so, on the ground that a Section 75 hearing was not the proper forum for such a claim.) The Hearing Officer recommended Harrison's dismissal. The District dismissed him effective March 24, 1998. Despite his claim that the disciplinary hearing was a pretext to procure his termination, Harrison did not bring an Article 78 proceeding challenging this decision, either.

After the hearing but prior to the Hearing Officer's determination, Harrison filed a second charge of discrimination with the SDHR and the EEOC, on January 21, 1998 ("Charge 2"). This charge alleged that the Section 75 Civil Service disciplinary proceedings were commenced in retaliation for his filing of complaints of discrimination—namely, Charge 1 and the Grievance. Harrison also charged that the District had denied him the position of Relief Driver on account of his race.

On July 27, 1998, Harrison filed the instant lawsuit. Although he had received a Right to Sue letter only with respect to Charge 1, his pleading did not complain of the matters covered by that charge. Instead, it complained of the matters covered by Charge 2, as to which no Right to Sue letter had yet been issued. Thus, given the precise charges made within the four corners of the pleading—none of which related to the matters raised in Charge 1—the complaint was premature at the time it was filed. However, on July 30, 1998, the SDHR dismissed Charge 2 for lack of probable cause, based on all the above matters. Again, Harrison took no

appeal by way of an Article 78 proceeding. The EEOC adopted the SDHR's finding of no probable cause and gave Harrison his Right to Sue letter, as required by law, on September 2, 1998. *See* Ex. P attached to the Southard Affidavit.

Harrison amended his complaint on October 26, 1998, to include a claim under 42 U.S.C. § 1983. The amended complaint does not refer to the Right to Sue Letter that pertains to Charge 2. This is obviously due to the fault of plaintiff's counsel, and I deem the complaint amended to refer to the proper Right to Sue Letter.

The District has moved for dismissal or summary judgment. Plaintiff opposes the motion.

On July 13, 1999, I advised the parties that I intended to convert this pre-answer motion to one for summary judgment pursuant to Fed.R.Civ.P. 12(b), in that matters outside the four corners of the pleadings had been submitted to the Court by both sides, and because both sides briefed the motion as a motion for summary judgment. I offered both sides one last chance to present any additional evidence by July 27, 1999. None was forthcoming.

*Conclusions of Law*

1. All of plaintiff's causes of action, except for his claims under Title VII, are subject to the principles of former adjudication. *See University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *DeCintio v. Westchester County Med. Ctr.,* 821 F.2d 111 (2nd Cir.1987).

2. For section 1983 purposes, the preclusive effect of SDHR's determinations with respect to Charges 1 and 2 depends on whether New York State courts would give those findings preclusive effect. *See DeCintio,* 821 F.2d at 116.

3. The doctrines of res judicata and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies when rendered pursuant to the adjudicato-

ry authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law. *See id.* at 117 (citing *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)).

■ 4. Under New York law, the burden rests with the proponent of the application of collateral estoppel (here, the defendants) to demonstrate the identicality and decisiveness of the allegedly precluded issues, while the burden rests on the opponent (here, the plaintiff) to establish the absence of a full and fair opportunity to litigate the issue in a prior action or proceeding. *See DeCintio,* 821 F.2d at 117 (citing *Ryan,* 62 N.Y.2d at 499–501, 478 N.Y.S.2d 823, 467 N.E.2d 487).

5. Defendants have established that the issues raised in the complaint in this action are identical in all respects to issues that were actually contested before both the Section 75 Hearing Officer and the SDHR: namely, that the denial of his application for the position of "Relief Driver" was on account of his race, and that the disciplinary charges were preferred against him in retaliation for his filing of Charge 1 and the Grievance. *See* respectively Exs. H and I attached to the Southard Affidavit.

6. SDHR's finding of "no probable cause" was presumptively made after the complainant (plaintiff) had a full opportunity to present on the record, though informally, his charges against his employer or other respondent, including the right to submit all exhibits which he wished to present and testimony of witnesses in addition to his own testimony. *See DeCintio,* 821 F.2d at 117 (citing *State Div. of Human Rights v. New York State Drug Abuse Control Comm.,* 59 A.D.2d 332, 336, 399 N.Y.S.2d 541, 544 (4th Dep't 1977)).

■ 7. After reviewing the transcript of the Section 75 hearing, I conclude that plaintiff was afforded all the rights necessary to give that determination preclusive

effect, including the right to be present personally and by counsel, the right to make arguments and present testimony and the right to cross examine. Plaintiff made his argument of retaliation and introduced his grievance into evidence, although the Hearing Officer, in response to the District's objection, announced that he was not going to try a discrimination case, and declined to make any finding in this regard. *See* Ex. D attached to the Southard Affidavit at 121–27. However, the Hearing Officer did sustain the serious allegations of misconduct that had been preferred against plaintiff, which afforded more than ample ground to discharge him from employment.

8. Plaintiff has not established that he was not afforded a full and fair opportunity to litigate his claim of retaliation (as outlined in Charge 2) either before SDHR or in his Section 75 hearing. Plaintiff's statement that discovery is necessary to establish the lack of opportunity is specious. He participated in both proceedings; indeed, he initiated one of them. He was present and knows precisely what went on. He is therefore fully possessed of all the information he should need to make his argument; discovery concerning how the hearings were conducted would add nothing to his ability to make a record. Moreover, the defendants have attached a transcript of the proceedings before the Section 75 Hearing Officer, which reveals exactly what went on during the proceedings. This transcript demonstrates that plaintiff actually raised his claim of retaliation and argued it before the Hearing Officer. *See* Ex. D attached to the Southard Affidavit. Defendants also attached both the March 5, 1998 and the July 30, 1998 "Determination and Order After Investigation" by the SDHR, both of which determined, after a review of the evidence, that Harrison's charges of discrimination and retaliation were without merit. *See* Exs. J and O respectively, attached to the Southard Affidavit. Plaintiff offers nothing by way of rebuttal. Therefore, he has failed

to sustain his burden on the question of collateral estoppel. *See DeCintio,* 821 F.2d at 117.

■ 9. Plaintiff's failure to avail himself of any appeal via Article 78 with respect to the actions of the Hearing Officer on the misconduct proceedings and the SDHR on Charge 2 precludes him from asserting here that his due process rights were violated in connection with either of those proceedings. *See Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877 (2d Cir.1996).

10. All of plaintiff's claims except his First and Third Causes of Action, which are brought pursuant to Title VII, 42 U.S.C. § 2000-e., are dismissed on the ground that the charges brought therein were finally resolved in prior proceedings, thus precluding plaintiff from asserting those claims in this Court.

■ 11. Plaintiff has not proffered any evidence from which a trier of fact could infer that he was denied the position of Relief Driver either because of his race or in retaliation for his having filed Charge 1 and/or the Grievance. It remains undisputed that plaintiff padded his time sheets and defrauded his insurance carrier. Either of those acts afforded Beckwith sufficient ground to deny plaintiff the job of Relief Driver, which the undisputed facts show is a position susceptible to the same sort of abuse plaintiff had already committed. Taken together, a rational trier of fact could not possibly reach any conclusion other than the one reached by Beckwith—that plaintiff was manifestly unfit for the job he sought. Thus, plaintiff has failed to make out a *prima facie* case that he was qualified for the position he sought, which is a prerequisite to his maintaining this action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

12. Additionally, no rational trier of fact could conclude that the disciplinary charges preferred against plaintiff were brought for any reason other than his serious misconduct; indeed, plaintiff, by pleading guilty to insurance fraud—committed against his insurer via the subornation of a fellow employee and via the use of defendant's stationery—admitted that he had committed acts worthy of discipline. *See* Certificate of Conviction, attached as Ex. G to the Southard Affidavit.

13. The only evidence that plaintiff proffers is his own self-serving statement that Beckwith told him, on September 17, 1997, that Harrison would never get the position of Relief Driver as long as Beckwith was Director of Transportation, and that Beckwith further stated Harrison could not have the job because he had previously filed a charge of discrimination against the District. However, plaintiff's own union representative, Deborah DeGeorge, attended the September 17, 1997 meeting at which Beckwith explained his decision to plaintiff. She has submitted an affidavit in which she specifically contradicts Harrison's statement. *See* Affidavit of Deborah DeGeorge. Harrison claims to be able to produce other witnesses who can testify about Beckwith's statements, but he has neither established on this record that those individuals were present at the meeting nor offered affidavits from them. Plaintiff's self-serving statement, viewed in light of his extensive record of dishonesty, does not suffice to create a genuine issue of disputed fact. *See Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 848 (7th Cir.1992) (stating that "self-serving statements may create a material dispute about the employee's ability, but do nothing to create a dispute about the employer's honesty—do nothing in other words, to establish that the proffered reason is a pretext for discrimination").

14. Defendants are entitled to summary judgment dismissing plaintiff's claims under Title VII. *See Silver v. City Univ.,* 947 F.2d 1021 (2nd Cir.1991) (affirming this Court's grant of summary judgment when plaintiff presented insufficient evidence for a Title VII claim).

15. Any charges that plaintiff could have brought under Title VII pursuant to his first Right to Sue letter, dated April 30, 1998, are now time-barred pursuant to 42 U.S.C.2000e–5(f)(1), in that plaintiff did not timely file a complaint containing the allegations covered by that letter within 90 days of his receipt of the letter. *See Sousa v. NLRB,* 817 F.2d 10, 11 (2nd Cir. 1987).

The Clerk of the Court is directed to enter judgment dismissing the complaint, with costs to defendants.

This constitutes the decision and order of the Court.